[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-12850

Non-Argument Calendar

————————————————

PAULETTE E. RAKESTRAW,
On behalf of herself and all persons similarly situated,

Plaintiff-Appellant,

*versus*

NATIONSTAR MORTGAGE, LLC,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cv-03144-ELR

————————————————

Before JORDAN, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

In this purported class action, Paulette E. Rakestraw asserts a single claim against Nationstar Mortgage LLC ("Nationstar"), the servicer of her home mortgage, under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et seq*. RESPA, among other things, requires that loan servicers provide information to borrowers about their loans upon written request. Rakestraw alleges that Nationstar's "incomprehensible" responses to her requests for information did not comply with RESPA's requirements. The district court granted summary judgment to Nationstar, finding its responses to Rakestraw's requests for information adequate, and that, regardless, Rakestraw failed to show actual damages—a required element of a RESPA claim. After careful review, we agree that Nationstar's responses complied with RESPA and affirm.

## I.    Factual Background

In April 2004, Rakestraw obtained a loan to purchase a home in Hiram, Georgia. From April 2004 to April 2013, Countrywide Home Loans and Bank of America serviced Rakestraw's loan. On April 1, 2013, servicing of the loan transferred from Bank of America to Nationstar.

On November 28, 2017, Nationstar received a letter from Rakestraw requesting

> 1) [A] [c]omplete payment history that
> includes an explanation and breakdown of all
> charges and credits applied during the life of
> the loan dating back to 2003 [sic], the
> origination of the loan.  2) A certified copy of
> the original note in its current condition/state.
> 3) A signed affidavit from someone in the
> company stating that the note is the original,
> not a scanned copy.

All parties agree that this letter constituted a qualified written request ("QWR") under RESPA, even though it only requested information and did not assert any errors relating to Nationstar's servicing of Rakestraw's loan.[1]

Two days later, Nationstar responded to the November 2017 QWR.  It provided Rakestraw with a copy of transaction histories covering the entire life of the loan up until that date. Nationstar also sent Rakestraw a copy of the note and security instrument.  Nationstar also informed Rakestraw that it could not provide her with a certified copy of the Note and signed affidavit until the loan was paid in full, informed her of the location of the

---

[1] Section 2605 contemplates two types of QWRs—one providing a notice of an error and the other simply requesting information.  A QWR asserting an error under RESPA triggers slightly different requirements than those triggered by a QWR requesting information.  *Compare* 12 C.F.R. § 1024.35(e) (outlining a mortgage servicer's obligations in response to a QWR providing notice of an alleged error) *with* 12 C.F.R. § 1024.36 (d) (providing the requirements for responding to a QWR that requests information).

originals, and gave her a name and contact information for further assistance.[2]

Then on April 16, 2018, Rakestraw sent a second QWR to Nationstar requesting information but, again, not identifying any errors. This time, however, Rakestraw asked for "an explanation and detailed breakdown of all" Bank of America payments and "an explanation and detailed breakdown of all escrow payments" for the entire history of the loan.

Four days later, Nationstar responded with a copy of Rakestraw's updated transaction history reflecting the period during which Nationstar serviced the loan through March 13, 2018 along with the transaction history for the loan from 2004-2006 when Countrywide was the servicer. In addition, Nationstar informed Rakestraw that the Bank of America transaction history, which Nationstar provided Rakestraw in its response to the first QWR, and which Rakestraw had independently obtained from Bank of America, was difficult to read and told her to contact Bank of America directly if she wanted a different version. Nationstar also explained that it could not attest to how funds were disbursed from escrow under the loan's prior servicers. And once again, Nationstar gave Rakestraw the direct phone number and email address of a representative to contact for further assistance, stating: "[i]f you have any specific questions about the information I have provided, please contact me directly."

---

[2] Rakestraw went on to send three additional QWR's, which we discuss below. But on March 16, 2018, before she sent her second QWR, Rakestraw informed Nationstar that she had contacted Bank of America directly and received a copy of the transaction history for the period before Nationstar took over the servicing of her loan.

Rakestraw submitted a third request for information on May 4, 2018. Much like she did in the first two QWRs, Rakestraw sought a complete transaction history for the life of the loan, including "an explanation and breakdown of all charges and credits applied . . . including an explanation of all the miscellaneous charges, and a detailed comprehensive breakdown of the escrow" dating back to the origination of the loan. Further, Rakestraw again requested a certified copy of the original note and an affidavit attesting to its authenticity. And, consistent with the past QWRs, Rakestraw did not identify any errors in the servicing of her loan.

Nationstar responded to this QWR six days later, sending Rakestraw a copy of the note, an updated transaction history, escrow history for the period during which Nationstar had serviced the loan, a copy of the transaction history from 2004–2006, and a copy of its response to Rakestraw's second QWR (which sought much of the same information). Nationstar also informed Rakestraw that it could not provide the original copy of the note until the loan was fully satisfied, reiterating that Nationstar could not attest to how the funds were used by prior servicers, that the Bank of America transaction history was difficult to read, and suggesting she contact Bank of America directly for a better version. And, again, Nationstar gave Rakestraw contact information to help her seek further assistance.

Later that month, on May 29, 2018, Nationstar received yet another QWR from Rakestraw, in which Rakestraw wrote

> I have asked multiple times over the last year for you to provide me detailed accounting information regarding my loan through the QWR process. To this date, you have still not provided me with the

adequate information. Your last two responses were directing me to contact Bank of America, the previous servicer from over 4 years ago, because it is not readable or available in your system. It is astonishing that you send me a monthly bill when you haven't validated or researched per my QWR's [sic] any of these amounts you claim that I owe.

She also requested an "explanation and detailed breakdown" of all charges and credits for the entire history of the loan, including all escrow payments. Furthermore, Rakestraw demanded a "legible and comprehensible breakdown of the account history" or, for the first time in any of her four QWRs, a "code sheet to be able to interpret" the account history. Once again, Rakestraw only sought information and did not identify any errors on her account.

Nationstar responded two days later providing, among other things, account histories for the entire life of the loan, a code sheet for Nationstar's transaction history, contact information for a Nationstar representative, and its response to her April QWR. Nationstar reiterated that it could not provide a code sheet for Bank of America or Countrywide's transaction history. It noted "[b]ased on the information provided by the previous servicer, the payment history appears to be reported accurately[,]" however, it also told Rakestraw that: "[i]f you have documentation that substantiates that any of the information reported by [Nationstar] or the prior servicer is incorrect, please provide the detailed information for review."

## II.    Procedural Background

In June 2018, Rakestraw filed this purported class action against Nationstar.  In her amended class action complaint—Rakestraw alleged that Nationstar violated RESPA by "refus[ing] to provide [a] complete and comprehensible account history[] and the explanation[] of charges and credits" which she requested in four separate QWRs.  Accordingly, she sought actual and statutory damages in addition to attorney's fees and costs.

After some discovery, Nationstar filed a motion for summary judgment in November 2020, along with its statement of undisputed material facts.  In its motion, Nationstar contended that its responses to Rakestraw's four requests for information complied with RESPA and that, even if they did not, Rakestraw failed to show that she was entitled to actual or statutory damages.  Although Rakestraw responded to Nationstar's motion, she failed to provide her own statement of undisputed facts as is required by the local rules.  See N.D. Ga. C. Rule 56.1(B).  In December 2020, she filed a motion seeking leave to amend her summary judgment response to add a statement of undisputed facts or, alternatively, to file a surreply.

The magistrate judge issued an Order and Final Report and Recommendation ("R&R") in March 2021.  The magistrate judge first recommended denying Rakestraw's motion for leave to amend because she failed to offer any legitimate justification for not filing a statement of undisputed facts, deeming as admitted the facts alleged in Nationstar's statement of undisputed facts as a result.  The magistrate judge recommended that the district court grant summary judgment to Nationstar because Nationstar "adequately responded" to Rakestraw's QWRs under RESPA as a

matter of law, and that Rakestraw failed to create a genuine issue of fact or show damages—actual or statutory.

Rakestraw objected to the R&R's recommendation to grant summary judgment but did not object to the recommendation to deny her motion to amend her summary judgment response with a statement of undisputed facts. The district court overruled Rakestraw's objections. The district court specifically found that Nationstar's responses complied with RESPA and that Nationstar "performed a 'reasonable search' as required by RESPA" in connection with Rakestraw's request for information from Bank of America. Concluding that Rakestraw failed to demonstrate a material issue as to: (1) whether Nationstar's responses complied with RESPA; (2) whether Nationstar conducted a reasonable search for records connected to a prior servicer; (3) whether Rakestraw incurred actual damages; and (4) whether Nationstar's conduct entitled her to statutory damages, the district court adopted the R&R and granted summary judgment to Nationstar. Rakestraw timely appealed.

## III.    Discussion

On appeal, Rakestraw says that Nationstar's handling of her requests for information violated RESPA in two ways. First, she claims that the account histories Nationstar provided her were "incomprehensible" and thus did not provide her with the information she requested per RESPA's requirements. Second, she says that Nationstar failed to perform a reasonable search for information that she requested relating to a prior servicer and that

Nationstar failed to give her proper notice that the information was not available to it.

Nationstar counters that it adequately responded to the substance of Rakestraw's QWRs and that it performed a reasonable search and properly notified Rakestraw that it did not have some of the requested information.

We review the grant of summary judgment *de novo*, "applying the same legal standards used by the district court." *Yarbrough v. Decatur Housing Auth.*, 941 F.3d 1022, 1026 (11th Cir. 2019). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Because this is an appeal from summary judgment, typically we would view the facts in the light most favorable to the non-moving party. *See Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021). But because Rakestraw failed to comply with N.D. Ga. Local Rule 56.1 by not filing a statement of undisputed material fact in response to Nationstar's, we "disregard or ignore evidence relied on by [Rakestraw]—but not cited in its response to [Nationstar's] statement of undisputed facts—that yields facts contrary to those listed in [Nationstar's] statement." *See Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008).[3] Having considered

---

[3] We have called compliance with Local Rule 56.1 "the only permissible way for [the non-movant] to establish a genuine issue of material fact at that stage," *see Reese*, 527 F.3d at 1268, but that does not mean we automatically affirm the grant of summary judgment to Nationstar. As the moving party, Nationstar still bears the burden of showing the absence of any genuine issue

Nationstar's statement of undisputed material facts against the record as a whole, we treat the facts listed therein as admitted for purposes of this appeal. *See id.*

Despite the admitted facts, Nationstar, as the moving party, "bears the initial responsibility" of demonstrating to the absence of any genuine issue of fact. *Celotex*, 477 U.S. at 323. However, Nationstar need not disprove Rakestraw's claim—it need only "show[]" an "absence of evidence to support [her] case." *See id.* at 325. "Mere conclusions and unsupported factual allegations are legally insufficient" to defeat a summary judgment motion. *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir.1989).

RESPA "is a consumer protection statute that imposes a duty on servicers of mortgage loans to acknowledge and respond to inquiries from borrowers," such as the four requests for information Rakestraw sent to Nationstar. *See Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 918 (11th Cir. 2017). The statute requires mortgage servicers to comply with the obligations set forth in 12 U.S.C. § 2605 and federal regulations promulgated to "carry out the consumer protection purposes of" the statute. *Id.* § (k)(1)(E). It also provides a private right of action to those harmed by a servicer's failure to comply with RESPA. *Id.* § 2605(f).

RESPA requires that a servicer respond to a QWR by:

> . . . conducting an investigation, [and then] provid[ing] the borrower with a written explanation or clarification that includes . . .(i) information requested by the borrower or an explanation of why

---

of fact and that it is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 23.

the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

*Id.* § 2605(e)(2)(C).

In addition, 12 C.F.R. § 1024.36 provides that a servicer who receives a QWR requesting information "with respect to the borrower's mortgage loan account" must either: (1) "[p]rovid[e] the borrower with the requested information and contact information, including a telephone number, for further assistance in writing;" or (2)

[c]onduct[] a reasonable search for the requested information and provid[e] the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

*Id.* § 1024.36(a),(d)(1)–(2).[4]

---

[4] Although this Court has not explained the contours of what constitutes an adequate response to a request for information under RESPA, we have opined that what constitutes an adequate response to a QWR asserting errors, *see* 12 C.F.R. § 1024.35(e), is one that actually responds to the borrower's specific inquiry. For example, in *Renfroe v. Nationstar Mortg., LLC*, we held that a borrower plausibly alleged a RESPA violation when she claimed that her loan servicer failed to respond to her request for an explanation of alleged errors in her account statement. Instead, the servicer sent "boilerplate statements"

To prevail on a RESPA claim, a plaintiff must show: (1) a defendant's failure to comply with a RESPA obligation; and, (2) that she sustained actual damages as a result. *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016). Therefore, Rakestraw bears the burden of showing that Nationstar's actions violated RESPA—*i.e.*, that its responses to her QWRs were inadequate and that it failed to conduct a reasonable search for the Bank of America materials or provide sufficient notice that it did not have the information. For the reasons we explain below, we hold that Rakestraw failed to establish that Nationstar violated RESPA and, accordingly, we affirm.[5]

## A. Nationstar's Responses Were Adequate Under RESPA

Here, the undisputed evidence shows that Nationstar's responses to Rakestraw's four QWRs complied with the applicable statutory and regulatory requirements. In response to a series of repetitive QWRs, Nationstar provided Rakestraw with the information she requested (with the exception of the unavailable information discussed below)—including transaction histories

---

with no applicability to the borrower's QWR, along with documents and information she had not requested. *See* 822 F.3d 1241 at 1244–45 (11th Cir. 2016). By contrast, in *Bates v. JPMorgan Chase Bank, NA*, we held that a servicer's response complied with RESPA (despite the borrower's "confusion" with it) because the response explained why certain payments were returned to the borrower and not applied to the loan—which was exactly what the borrower inquired about in her QWR. *See* 768 F.3d 1126, 1129, 1134–35 (11th Cir. 2014).

[5] Because Rakestraw has failed to show any dispute of fact as to whether Nationstar violated RESPA, we do not reach the issue of actual or statutory damages.

covering the entire life of the loan.  Moreover, all of Nationstar's responses provided the contact information of a person who could assist Rakestraw in the future.  In doing so, Nationstar complied with RESPA's response obligations.  *See* 12 U.S.C. § 2605(e)(2)(C); 12 C.F.R. § 1024.36(a),(d)(1) (requiring servicers in receipt of a request for information to "[p]rovid[e] the borrower with the requested information and contact information, including a telephone number, for further assistance in writing").

The core of Rakestraw's argument that Nationstar's responses did not satisfy RESPA is that the transaction histories Nationstar gave her are "incomprehensible."  We are unpersuaded for several reasons.  First, to the extent Rakestraw was struggling to understand the account histories for the period during which Nationstar serviced the loans, she kept that to herself until submitting the fourth QWR, at which point she requested a "legible and comprehensible breakdown of the account history or a code sheet."  In response, Nationstar sent Rakestraw a code sheet for Nationstar's transaction history, thereby providing her with the requested information.

Second, Rakestraw points to nothing in the record demonstrating that the transaction histories were actually "incomprehensible."  By contrast, Nationstar points us to the "misc. posting" entries on the Bank of America account histories (something Rakestraw notes was specifically "incomprehensible"), which are far from "incomprehensible" and show how the charges were being applied to the loan.  Borrower satisfaction is not the standard by which we measure a servicer's response to a request for information, and Rakestraw's confusion does not equate to a

RESPA violation.[6] *See Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1135 (11th Cir. 2014) (holding that a servicer's response to a QWR, albeit one identifying an error and not merely requesting information, complied with RESPA because it was responsive to the inquiry even though the borrower "was confused and/or unsatisfied" with the response).

### B. Nationstar Conducted a Reasonable Search and Gave Proper Written Notice to Rakestraw

As discussed previously, RESPA requires a servicer to inform the borrower in writing that it does not have the requested information, the basis for that determination, and contact information for a representative. *See* 12 U.S.C. § 2605(e)(2)(C); 12 C.F.R. § 1024.36(d)(1).

In response to Rakestraw's request for a more legible version of the Bank of America transaction histories and a code sheet for those histories, Nationstar told her, in writing, that it did not have those documents and could not attest to how the prior servicer treated payments on Rakestraw's account. Like all of Nationstar's responses, this one provided contract information for a person who could assist Rakestraw in the future. This is all RESPA requires. *See* 12 U.S.C. § 2605 (e)(2)(C); 12 C.F.R. § 1024.36(a), (d)(2).

In Rakestraw's view, however, RESPA required Nationstar to "investigate[] past its own file[s]" and notify her, not only that

---

[6] We pause to note that Nationstar included contact information for further assistance in each of its responses, but Rakestraw never reached out for help understanding the allegedly "incomprehensible" information Nationstar provided. Instead, she continued to send Nationstar QWRs.

the requested information was unavailable to it, but also that "Nationstar could not obtain it and why it could not obtain it." Yet Rakestraw points to no authority—from the text of the statute, its accompanying regulations, or cases from our Court—suggesting that to conduct a "reasonable search" a loan servicer must search beyond its own records and that the word "unavailable" really means "unobtainable." *See* 12 U.S.C. § 2605(e)(2)(C)(i). And as discussed previously, RESPA places the burden on Rakestraw to show that Nationstar did not conduct a reasonable search—not on Nationstar to prove that its search was reasonable. *Renfroe*, 822 F.3d at 1244.

Accordingly, Rakestraw has failed to show that Nationstar conducted an unreasonable search or improperly notified her that it did not have the requested information.

\*    \*    \*

The district court did not err when it granted summary judgment in favor of Nationstar. Accordingly, we affirm.

**AFFIRMED.**